UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, Plaintiff,

v.

9A MASON ROAD, also known as 15 MASON ROAD, EAST FREETOWN, MASSACHUSETTS, Defendant.

KATHLEEN WHITTAKER, BEVERLY GURNEY, and SCOTT PORTEOUS, Claimants.

Civil Action No. 03-12432RWZ

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE**
**PLEADINGS AS TO SCOTT PORTEOUS' NOTICE OF CLAIM**

**BACKGROUND**

In this action in rem, the United States seeks to forfeit certain real property located on Mason Road in East Freetown, Massachusetts (the "Defendant Property"). The United States commenced this action by filing its Verified Complaint for Forfeiture In Rem (the "Complaint") on December 4, 2003. The Complaint and incorporated Affidavits of Sergeant-Detective Michael J. Byrnes of the Freetown Police Department and United States Drug Enforcement Administration Task Force Agent Celeste T. Cabral set forth probable cause to believe that the Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(7) as "real property used, or intended to be

used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846, and/or 856." Complaint, ¶ 4.

On December 16, 2003, this Court granted the United States' Ex Parte Motion for Lis Pendens, and the Lis Pendens was recorded at the Bristol County Registry of Deeds on December 30, 2003. On December 31, 2003, this Court found probable cause for forfeiture of the Defendant Property and issued the forfeiture Warrant and Monition, directing the United States Marshals Service to publish the notice of forfeiture and to serve notice upon, among others, Scott Porteous ("Porteous"). The United States Marshals Service served Porteous on February 10, 2004, and published notice of this forfeiture proceeding on February 10, 17, and 24, 2004, in the Boston Herald.

On March 8, 2004, Porteous filed a Notice of Claim to the Defendant Property (the "Claim"), and on March 24, 2004, he filed an answer (the "Answer"). Porteous alleged in support of his claim to the Defendant Property that "he has a possessory interest in part of such property." Claim ¶ 1. He attached to his Claim the deed by which the Defendant Property was transferred to the present owner, Kathleen Whittaker ("Whittaker"),[1] and further stated that "his claim is not

[1] Whittaker also has filed a claim to the Defendant Property. A third claim was filed by Whittaker's mother and neighbor, Beverly Gurney.

frivolous, as he lives and breeds dogs on part of said property." Id. In his Answer, Porteous denied the forfeiture allegations of the Complaint and asserted six affirmative defenses and a demand for jury trial. As set forth below, Porteous has failed to meet his burden of alleging a sufficient interest in the Defendant Property to contest this forfeiture action.

## FACTS

This is the second complaint for forfeiture in rem that the United States has filed against the Defendant Property based on the cultivation, possession and/or distribution of marijuana by Porteous and Whittaker. As set forth in the Affidavit of Freetown Police Detective-Sergeant Michael J. Byrnes, attached as Exhibit A to the Complaint and incorporated therein by reference ("Byrnes Aff."), in the Fall of 1991, law enforcement officers investigated the cultivation, possession and distribution of marijuana on the Defendant Property and ultimately executed a search warrant at the Defendant Property on September 19, 1991. Byrnes Aff. ¶ 4. During the September 1991 search, law enforcement officers seized, inter alia, paraphernalia commonly used to cultivate and package marijuana for sale, assorted ledgers and journals, a Ziploc bag containing rolled plastic bags of marijuana labeled with names and numbers that corresponded with names and numbers in the seized ledgers, and marijuana in various stages of cultivation, including marijuana seeds and live

and dried plants.[2] The estimated weight of the marijuana seized during the September 1991 search was three and one-half pounds. Id. ¶ 5.

In January 1992, the United States filed a civil complaint in this Court seeking forfeiture of the Defendant Property, based the 1991 investigation and September 1991 search, pursuant to 21 U.S.C. § 881(a)(7). See United States v. 15 Mason Rd., Civ. No. 92-10197-WD.[3] The case was resolved on January 21, 1994, when United States District Judge Nathaniel M. Gorton endorsed a Judgment and Order of Forfeiture of Substitute Res, ordering the Defendant Property substituted by $10,000, and forfeiture of $10,000 to the United States. Id., Doc. No. 36.

On August 12, 2003, more than eight years after the first forfeiture case was resolved, Chief Warrant Officer David Picard

---

[2] During the September 1991 search, after law enforcement officers advised Porteous of his rights and informed him that he was being charged with possession with the intent to distribute a class D substance, Porteous stated: “Yeah, possession but not distribution. I grow 12, 13 ounces a year and bag it so I won’t have to buy any. Hey, at least I don’t drink!” Id. ¶ 7.

[3] The 1991 forfeiture case was described in the Byrnes Affidavit, which was attached to the Complaint and incorporated therein by reference. Regardless, a court may properly consider public documents, including pleadings, when evaluating a motion to dismiss for failure to state a claim or for judgment on the pleadings without converting the motion into one for summary judgment. Lakeside Builders, Inc. v. Planning Board of the Town of Franklin, 2002 WL 31655250, *2 (D. Mass., March 21, 2002) (citing Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994) and Waterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993)).

of the Massachusetts National Guard flew a helicopter over the Long Pond area of Freetown and observed marijuana plants growing on what was later determined to be the Defendant Property. Id. ¶ 12. On September 16, 2003, Detective-Sergeant Byrnes accompanied Picard on a fly-over of the Long Pond area, during which they observed approximately thirty marijuana plants growing on the Defendant Property. Id. ¶ 13. On both occasions, a white male was observed pulling a covering material over the suspected plants so as to conceal their identity. Id. ¶¶ 12, 13.

Law enforcement officers executed another search warrant at the Defendant Property on September 17, 2003. Id. ¶ 16. During the search, officers seized, among other things, sixty-two marijuana plants weighing fifty-four pounds (including stalks and root systems). Id. ¶¶ 17, 22. Officers also seized fourteen marijuana cigarettes and ten pounds of loose marijuana leaves gathered from the Defendant Property. Id. During the search, law enforcement officers located a network of clotheslines which they recognized, based on their training and experience, as a mechanism for drying marijuana plants. Id. ¶ 20.

As officers seized the marijuana plants, Porteous was arrested and advised of his rights. Without questioning, Porteous told the officers that he knew why they were there and that they would find “what you are looking for” behind the foundation under the white tarp and that the rest would be in the

greenhouse. Id. ¶ 18. While watching the search, Porteous approached Freetown Police Officer Michael J. Connell and asked "which helicopter were you guys in? I should have picked this stuff three days ago." Id. ¶ 19.

Whittaker arrived at the Defendant Property during the execution of the search warrant. After requesting a copy of the search warrant and being advised by law enforcement officers that Porteous had been arrested and charged with possession with the intent to distribute a class D substance, Whittaker stated "I know he is growing marijuana here." Id. ¶ 21.

**ARGUMENT**

A Rule 12(c) motion should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Int'l Paper Co. v. Jay, 928 F.2d 480, 482-83 (1st Cir. 1991) (affirming dismissal under Rule 12(c)) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In evaluating a Rule 12(c) motion, the Court must accept the claimant's pertinent well-pleaded facts as true and draw all reasonable inferences in favor of the claimant, but it "need not credit conclusory statements or merely subjective characterizations" contained in the claim. Lakeside Builders, Inc. v. Planning Board of the Town of Franklin, 2002 WL 31655250, *2 (D. Mass. 2002) (granting Rule 12(c) motion); Int'l Paper, 928 F.2d at 482.

A motion for judgment on the pleadings is appropriate where, as here, a claimant has not shown that he or she has standing to challenge a forfeiture action. See United States v. $244,320 in United States Currency, 295 F. Supp. 2d 1050, 1062 (S.D. Iowa 2003) (Rule 12(c) motion granted where claimant did not allege facts sufficient to establish standing to challenge forfeiture of property); United States v. New Silver Palace Rest., 810 F. Supp. 440 (E.D.N.Y. 1992) (same). "Standing is a threshold consideration in all cases, including civil forfeiture cases." United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2003) (citing United States v. Cambio Exacto, S.A., 166 F.3d 522, 526 (2d Cir. 1999)). Defenses against the forfeiture of property are brought by third party claimants, who must show that they have independent standing to intervene in the civil action. Id. (citations omitted). "Standing in such cases has both constitutional and statutory aspects." Id. (citations omitted).

With regard to constitutional standing, a claimant must demonstrate a "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." Sierra Club v. Morton, 405 U.S. 727, 731 (1972). The burden is on the claimant to demonstrate a "colorable interest in the property, redressable, at least in part, by a return of the

property." United States v. 7725 Unity Ave., 294 F.3d 954, 957 (8th Cir. 2002); see also United States v. One 1986 Volvo 750T, VIN No. YV1GX8748G1015250, 765 F. Supp. 90, 91 (S.D.N.Y. 1991) (citing Mercado v. United States Customs Service, 873 F.2d 641, 644 (2nd Cir. 1989)). In the interest of judicial economy, the Court should decide the issue of standing at the commencement of litigation, rather than deferring consideration until trial. United States v. 1998 BMW "I" Convertible, VIN # WBABJ8324WEM20855, 235 F.3d 397, 399 (8th Cir. 2000) (citations omitted).

The "colorable interest" necessary to maintain a claim in a forfeiture action must be a colorable ownership or possessory interest. See United States v. $81,000 in United States Currency, 189 F.3d 28, 35 (1st Cir. 1999) (citations omitted); United States v. Contents of Accounts Nos. 3034504504 and 144-07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc., 971 F.2d 974, 985 (3rd Cir. 1992). Mere legal title, as in the case of a "straw" or nominal owner of property, does not confer standing to challenge a forfeiture case. See, e.g., $81,000, 189 F.3d at 35 ("While John Bulger has legal title to the defendant property, the question still remains whether he is a nominal or straw owner of the property or a legal owner who exercised dominion and control."); Accounts Nos. 3034504504 and 144-07143, 971 F.2d at 985 (district court did not err in striking claim of straw owner

of accounts for lack of standing). Similarly, a naked claim of possession does not confer standing to contest forfeiture. See, e.g., Mercado, 873 F.2d at 644; United States v. $746,198 in United States Currency, More or Less, 299 F. Supp. 2d 923, 928 (S.D. Iowa 2004).

Porteous admits, by attaching the deed transferring the Defendant Property to Kathleen A. Whittaker, that he has no ownership interest in the Defendant Property. Instead, he alleges in his Claim that he has "a possessory interest in part of the [Defendant Property]", and that "he lives and breeds dogs on part of the [Defendant Property]". Claim ¶ 1. However, it is well established that such a naked claim of possession, without more, does not satisfy the claimant's burden of demonstrating standing to challenge forfeiture of property. $244,320, 295 F. Supp. 2d at 1062 (citing cases, "the Court finds a substantial body of law that requires some additional showing beyond the allegation of a possessory interest in order to establish standing"); Mercado, 973 F.2d at 644-45 (claimant's naked possession, without allegations of knowledge of presence and intent to control, insufficient to establish standing to challenge forfeiture); United States v. One Parcel of Real Property Located at Tracts 10 and 11 of Lakeview Heights, 51 F.3d 117, 121 (8th Cir. 1995) (residents of real property did not have standing to challenge forfeiture where they did not show indicia

of title or financial stake); United States v. $321,470 United States Currency, 874 F.2d 298, 304 (5th Cir. 1989) (claimant's unexplained naked possession of currency does not rise to the level of interest required for standing to challenge forfeiture); United States v. Real Property in South Portland, Maine, 760 F. Supp. 7 (D. Me. 1991) (children who did not have legal title to property did not have standing to contest forfeiture, even though they lived at the house at various times and made improvements thereto); One 1986 Volvo 750T, 765 F. Supp. at 92 (without a valid lease, claimant had no possessory interest in seized vehicle sufficient to confer standing); $746,198, 299 F. Supp. 2d at 932 (claimant's naked possession of found currency is not enough to establish standing to maintain claim in forfeiture action); United States v. $182,980 in United States Currency, 1998 WL 307059 (S.D.N.Y. 1998) (claimant's conclusory statement that he was lawful possessor of currency insufficient to confer standing to challenge forfeiture); but see United States v. 8402 W. 132nd St., 103 F. Supp. 2d 1040 (N.D. Ill. 2000).

In order to have standing to challenge the forfeiture of the Defendant Property, Porteous must allege more than mere custody: "'[p]ossession' denotes custody plus a right or interest of proprietorship, i.e. a domination or supremacy of authority over the property in question" as well as "a knowledge of presence and an intent to control." Mercado, 873 F.2d at 644-45; see also

$81,000, 189 F.3d at 36-39 (because he had possession of bank account held jointly with his brother and exercised dominion and control the account, claimant had standing to challenge forfeiture of the account). Porteous has not alleged any facts to indicate that he has any domination, supremacy of authority, or control over the Defendant Property. Nor does he allege facts regarding what “part” of the Defendant Property he possesses, how he came to possess part of the Defendant Property or the nature of his possession of the property. See $244,320, 295 F. Supp. 2d at 1060 (claim must include “factual allegations regarding how the claimant came to possess the property, the nature of the claimant’s relationship to the property, and/or the story behind the claimant’s control of the property.”)(quoting United States v. $515,060.42 in United States Currency, 152 F.3d 491, 498 (6th Cir. 1998)). Two published decisions denying standing in forfeiture actions against real property are particularly illustrative of the flaws in Porteous’ Claim. In Tracts 10 and 11, the Eighth Circuit determined that parents who had been living in their son’s home did not have standing to file claims in the forfeiture action against the property. 51 F.3d at 119. The son never lived on the property, and while they lived on the property, the parents made substantial improvements to the house. Id. However, the son paid the taxes, insurance and for building materials used to remodel the house. Id. at 120. The court

determined that the parents' possession of property, without "indicia of title" or "adequate proof of a financial stake," did not confer standing to challenge the forfeiture. Id.

In United States v. Real Property Located at Section 18, Township 23, Range 9, Sunnyview Plat, Lots 4 & 5, Lakeview Drive, the Ninth Circuit found that a claimant who worked on a piece of property and contributed funds towards the purchase of the property did not have standing to challenge the forfeiture of that property. 976 F.2d 515, 520 (9th Cir. 1992). Two claimants lived together in a mobile home on a tract of land; both the mobile home and the land were purchased with the claimants' joint funds. Id. at 517. The land was titled in the name of one claimant (Carlson), and the mobile home was titled in the name of the other claimant (Malmgren). The claimants separated, and Carlson continued to live in the mobile home while Malmgren moved off the property but continued to operate a mill on the property. Id. After discovering evidence of marijuana cultivation during the execution of a search warrant at the property, the government instituted civil forfeiture case against property and mobile home. Id. The Ninth Circuit upheld the district court's determination that Malmgren did not have standing to challenge the forfeiture of the land, despite the fact that Carlson and Malmgren had jointly purchased the land, and that Malmgren worked on the land. The Court noted that the land was titled to Carlson

as a single woman, and Malmgren paid $400 per month to Carlson to use the property to operate the mill. Id. at 519-20.

Porteous has alleged nothing more than the claimants in Tracts 10 and 11 and Real Property Located at Section 18. In fact, he has alleged much less. He does not claim to have a valid lease to use the Defendant Property, nor does he claim to have made any improvements thereon. As set forth above, however, even these allegations would not confer standing on a mere possessor of real property. Otherwise, every tenant in a high-rise apartment complex could file a claim in a forfeiture case against that complex. The First Circuit recognized this threat when it stated that, in order to have standing, a claimant's interest must satisfy "the prudential considerations defining and limiting the role of the court." United States v. 116 Emerson St., 942 F.2d 74, 78 (1st Cir. 1991). The focus in determining standing is injury. Cambio Exacto, 166 F.3d at 527; 1998 BMW "I" Convertible, 235 F.3d at 399 ("the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue") (internal quotations omitted). A successful challenge to this forfeiture action will result in the return of the Defendant Property to the owner, claimant Whittaker, not to Porteous. Opening the floodgates to allow mere possessors of real property, such as Porteous, to maintain claims in forfeiture cases would encourage the filing

and protracted litigation of claims by those who have no chance of recovering the property under the law.

It is well established that Porteous bears the burden of pleading standing to challenge this forfeiture action at the outset of the case. Because he has failed to allege a colorable ownership or possessory interest in the Defendant Property, his Claim must be dismissed.

**CONCLUSION**

For the reasons set forth herein, the Court should grant the government's motion for judgment on the pleadings.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By: /s/Kristina E. Barclay
KRISTINA E. BARCLAY
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: April 23, 2004